UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KOHOBI SCOTT,

                Plaintiff,

      v.

SYNCHRONY BANK and U.S. DEPARTMENT
OF EDUCATION,

                Defendants.
_____

**DECISION AND ORDER**

6:20-CV-06524 EAW

## INTRODUCTION

Plaintiff Kohobi Scott ("Plaintiff") brings this action alleging violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("the FCRA") against Synchrony Bank ("Synchrony") and the United States Department of Education (the "Department of Education").[1]  Currently pending before the Court are a motion to dismiss filed by Synchrony (Dkt. 14) and a motion to dismiss or for summary judgment filed by the Department of Education (Dkt. 22).  For the reasons that follow, the Court (1) finds that it lacks subject matter jurisdiction over Plaintiff's claims against the Department of Education and accordingly grants the Department of Education's motion to dismiss and (2) denies Synchrony's motion to dismiss.

---

[1]    Equifax Information Solutions, LLC ("Equifax") was initially also named as a defendant, but Plaintiff voluntarily dismissed his claims against that entity on January 27, 2021.  (Dkt. 1; Dkt. 27).

- 1 -

## FACTUAL BACKGROUND

Plaintiff alleges that Synchrony and the Department of Education are "inaccurately reporting their tradelines . . . with . . . erroneous scheduled monthly payment amounts on Plaintiff's Equifax credit disclosure." (Dkt. 1 at ¶ 7). More particular, Plaintiff claims that Synchrony is reporting a tradeline with a scheduled monthly payment amount of $39.00 and the Department of Education is reporting a tradeline with a scheduled monthly payment amount of $421.00, when in fact the accounts reflected by these tradelines "are closed with $0.00 balance[s]" and "Plaintiff no longer has an obligation nor the right to make monthly payments to [Synchrony and the Department of Education] such as to bring the accounts current." (*Id*. at ¶¶ 8-10).

According to Plaintiff, on or about May 5, 2020, she submitted a letter to Equifax disputing the tradelines reported by Synchrony and the Department of Education, explaining that the accounts they reflected were closed. (*Id*. at ¶ 13). Plaintiff claims that Equifax forwarded her consumer dispute to Synchrony and the Department of Education, and that Synchrony and the Department of Education "verified to Equifax that the reporting of" the disputed tradelines was accurate. (*Id*. at ¶¶ 14-16).

## PROCEDURAL BACKGROUND

Plaintiff filed this action on July 22, 2020. (Dkt. 1). Synchrony filed its motion to dismiss on October 5, 2020. (Dkt. 14). Plaintiff filed her response on October 26, 2020, and Synchrony filed its reply on November 2, 2020 (Dkt. 17; Dkt. 18).

The Department of Education filed its motion to dismiss or for summary judgment on December 21, 2020. (Dkt. 22). Plaintiff filed her response on January 12, 2021, and the Department of Education filed its reply on January 19, 2021. (Dkt. 25; Dkt. 26).

## DISCUSSION

### I. The Department of Education's Motion to Dismiss or For Summary Judgment

In support of its motion to dismiss or for summary judgment, the Department of Education makes three arguments: (1) the Court lacks subject matter jurisdiction over Plaintiff's claims against it because the United States has not waived its sovereign immunity to claims under the FCRA; (2) Plaintiff has not plausibly pled a violation of the FCRA by the Department of Education; and (3) the Department of Education never received notice from Equifax of Plaintiff's consumer dispute. (Dkt. 22-4).

Where a party has called into question both the Court's subject matter jurisdiction and the merits of the claims against it, the Court is generally constrained to consider the jurisdictional issue as a threshold matter. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."). The Court accordingly turns first to the Department of Education's assertion of sovereign immunity.

"The United States, as sovereign, is immune from suit unless it waives immunity and consents to be sued." *Cooke v. United States*, 918 F.3d 77, 81 (2d Cir. 2019), *cert. denied*, ___ U.S. ___, 139 S. Ct. 2748 (2019). "A waiver of the Federal Government's

sovereign immunity must be unequivocally expressed in statutory text, and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted).  Sovereign immunity "extends to federal agencies and officers acting in their official capacities." *Foster v. Fed. Emergency Mgmt. Agency*, 128 F. Supp. 3d 717, 723 (E.D.N.Y. 2015).  "Where there is no statute expressly waiving the sovereign immunity of the United States, the court lacks subject matter jurisdiction to adjudicate the claim."  *Stewart v. I.R.S.*, No. 99-CV-2589(JS)(MDG), 1999 WL 1332373, at *1 (E.D.N.Y. Dec. 6, 1999).

As another judge in this Circuit recently explained, "[t]he Second Circuit has not ruled on the issue of whether the FCRA contains a waiver of sovereign immunity. However, two of the three circuits that have considered this issue have concluded that the FCRA does not contain such a waiver." *Stein v. U.S. Dep't of Educ.*, 450 F. Supp. 3d 273, 277 (E.D.N.Y. 2020) (citing *Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799 (4th Cir. 2019) (finding no waiver); *Daniel v. Nat'l Park Serv.*, 891 F.3d 762 (9th Cir. 2018) (finding no waiver); and *Bormes v. United States*, 759 F.3d 793 (7th Cir. 2014) (finding waiver)).

Having carefully considered the issue, the Court agrees with the Fourth and Ninth Circuits that the FRCA does not unambiguously and unequivocally waive the United States' sovereign immunity.  As the Fourth Circuit explained in *Robinson*, the FCRA provides that "'[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer' for actual damages, costs, and attorney's fees."  917 F.3d at 802 (quoting 15 U.S.C. § 1681o). Accordingly, resolution of whether the FRCA waives federal sovereign immunity turns on the meaning of "person" as used in the statute.  *Id*. ("This case centers on the meaning of

- 4 -

the word 'person' in [the FCRA], specifically whether the federal government is a 'person' for purposes of FCRA's general civil liability provisions.").

The Supreme Court has established a "longstanding interpretive presumption that 'person' does not include the sovereign." *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 780 (2000). Here there is evidence cutting against that presumption—namely, that the FCRA defines "person" as including a "government or governmental subdivision or agency[.]" 15 U.S.C. §§ 1681a(b), n. However, this definition "does not specifically mention the United States or the federal government," *Robinson*, 917 F.3d at 803, and "[g]enerally, when Congress intends to include a waiver of sovereign immunity in a statute, Congress includes the words 'United States' in the waiver," *Stein*, 450 F. Supp. 3d at 277. Moreover, reading "person" as used in the FCRA to include the federal government "leads to implausible results," *Daniel*, 891 F.3d at 770, most prominently that it would both authorize the government to bring criminal proceedings against itself and empower federal agencies and state governments to pursue civil enforcement actions against the United States, *see id.* at 770-71. This would be an unprecedented scheme, and it is doubtful "that Congress meant to build a novel enforcement regime without doing so explicitly." *Id*. at 771 (noting that "[t]he spectre of the Federal Trade Commission suing the United States, aka itself, to recover a civil penalty from itself makes little sense." (quotation omitted)).

Moreover, there is an express waiver of federal sovereign immunity in a separate provision of the FCRA. *See* 15 U.S.C. § 1681u(j) ("Any agency or department of the United States obtaining or disclosing any consumer reports, records, or information

contained therein in violation of this section is liable to the consumer" for statutory and actual damages, and, "if the violation is found to have been willful or intentional, such punitive damages as a court may allow."). "Because Congress knew how to explicitly waive sovereign immunity in the FCRA, it could have used that same language when enacting subsequent enforcement provisions." *Daniel*, 891 F.3d at 772.

In sum, "Plaintiff is unable to overcome the presumption that the word 'person' does not include the sovereign and, thus, cannot show that the statute's text contains a clear and unambiguous waiver of sovereign immunity." *Stein*, 450 F. Supp. 3d at 278; *see also F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012) ("Any ambiguities in the statutory language are to be construed in favor of immunity[.]"). Indeed, at least two other judges in this Circuit to have considered the issue have reached the same conclusion. *See Stein*, 450 F. Supp. 3d at 278; *Edelman v. United States Gov't*, No. 18-CV-2143(JS)(AKT), 2020 WL 7123175, at *7 (E.D.N.Y. Dec. 4, 2020) ("[B]ecause the FCRA does not contain a clear and unequivocal waiver of the Government's sovereign immunity, this Court is without subject matter jurisdiction to adjudicate Plaintiff's FCRA claims against the Federal Defendants.").

Accordingly, the Court finds that it lacks subject matter jurisdiction over Plaintiff's FCRA claims against the Department of Education, and dismisses those claims without prejudice. The Court accordingly cannot and does not reach the Department of Education's merits-based arguments.

## II.   Synchrony's Motion to Dismiss

Synchrony's motion to dismiss is comparatively straightforward: it argues for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that Plaintiff has not plausibly alleged it violated the FCRA. (Dkt 14-1). The Court disagrees, for the reasons set forth below.

### A.   Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal

quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

### B. Plaintiff has Plausibly Alleged an Inaccuracy

As another court in this Circuit has explained, the FRCA:

> imposes several duties on those who furnish information to consumer reporting agencies, two of which are: (1) to report accurate information and correct any inaccurate information, and (2) upon notice from a credit reporting agency that there is a dispute regarding the completeness or accuracy of the information provided, to conduct an investigation, review the information in question, and report the results to the credit reporting agency.

*Jenkins v. Chase Bank USA, N.A.*, No. 14-CV-5685 SJF AKT, 2015 WL 4988103, at *7 (E.D.N.Y. Aug. 19, 2015) (quotation and citations omitted). There is a private cause of action under the FCRA "where a plaintiff shows that: (1) the furnisher received notice of a credit dispute from a credit reporting agency, and (2) the furnisher thereafter acted in willful or negligent noncompliance with the statute." *Id*. (quotation omitted).

Here, Plaintiff has alleged both willful and negligent violations of the FCRA by Synchrony. (*See* Dkt. 1 at ¶¶ 19-30). "The elements of a negligence claim under [the FCRA] are (1) inaccuracy, (2) failure to follow reasonable procedures, (3) actual damages, and (4) causation. A willfulness claim has the additional element of a knowing or reckless failure to follow reasonable procedures." *Mader v. Experian Info. Sols., LLC*, No. 19 CIV. 3787 (LGS), 2020 WL 264396, at *2 (S.D.N.Y. Jan. 17, 2020) (quotations and citations omitted). It is the first of these elements—inaccuracy—that Synchrony challenges here.

Specifically, Synchrony argues that reporting "historical payment information [does] not amount to an inaccuracy or incompleteness" sufficient to sustain a claim under the FCRA. (Dkt. 14-1 at 10).

The parties have not cited, and the Court has not discovered in its own research, any cases in this Circuit addressing this argument. However, numerous district courts outside this Circuit have considered some form of this contention. For example, in *Martin v. Equifax Info. Servs., LLC*, No. 4:19-CV-3691, 2020 WL 1904496 (S.D. Tex. Apr. 17, 2020), the court rejected the plaintiff's contention that "because the account was charged off and closed, the monthly payment amount should have reflected $0.00." *Id*. at *2. The court in *Martin* noted that there were additional notations on the credit report "that the account had been charged off and closed" and held that "[w]ith such additional notations that the account had been charged off and closed, the disputed trade line was not so misleading as to be inaccurate." *Id*. The *Martin* court cited several other cases reaching similar conclusions: *Rodriguez v. Trans Union LLC*, No. 1:19-CV-379, 2019 WL 5565956, at *3 (W.D. Tex. Oct. 28, 2019); *Meeks v. Equifax Info. Servs., LLC*, No. 1:18-CV-3666, 2019 WL 1856411, at *5-6 (N.D. Ga. Mar. 4, 2019); *Gibson v. Equifax Info. Servs., LLC*, No. 5:18-cv-00465, 2019 WL 4731957, at *4 (M.D. Ga. July 2, 2019). Other courts have reached similar conclusions. *See, e.g., Parker v. Trans Union, LLC,* No. 1:19-CV-1897-TCB-JKL, 2019 WL 11504859, at *2 (N.D. Ga. Sept. 24, 2019) (finding no viable FCRA claim where historical payment information was provided, but account marked "paid in full/was a charge off" and had a balance of $0).

The Court finds the reasoning in these cases persuasive. "Although the Second Circuit has yet to address the issue, the overwhelming weight of authority holds that a credit report is inaccurate either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect on credit decisions." *Grayson v. Equifax Credit Info. Servs.*, No. 18-CV-6977 (MKB), 2021 WL 2010398, at *8 (E.D.N.Y. Jan. 29, 2021) (quotation omitted). The reporting of an historical payment account, when coupled with a clear notation that an account is closed and the balance is $0.00, simply cannot satisfy this standard. As the court in *Baker v. Pinnacle Credit Union*, No. 1:19-CV-03455, 2020 WL 4696713 (N.D. Ga. Aug. 13, 2020) aptly explained, "no reasonable prospective lender would—upon reviewing the information [the defendant] provided and seeing a closed line-of-credit, a closed date more than a year old, and a $0.00 balance—find the reporting of a $94 scheduled payment to mean Plaintiff still owed that much each month." *Id*. at *3.

However, notwithstanding the Court's agreement with the decisions cited above, Synchrony has not demonstrated its entitlement to dismissal of the claims against it at this point in the proceedings, because it has failed to demonstrate that the instant matter is analogous to those cases. In particular, there is nothing in the record before the Court showing that the Synchrony tradeline as to which Plaintiff complains was marked on her Equifax credit report as "closed" or "paid" with a $0.00 balance. Plaintiff's complaint contains no allegations to that effect—while she alleges that the accounts reflected by the tradelines "are closed with $0.00 balance" (Dkt. 1 at ¶ 10), she does not state that such information is reflected in the Equifax credit report, and the Court is obligated at this stage

of the proceedings to draw all inferences in her favor.  Further, the only copies of the Equifax credit report in the record are those submitted by Plaintiff in opposition to the Department of Education's motion, which are redacted with respect to all accounts except for the disputed tradeline with the Department of Education.  (Dkt. 25-3; Dkt. 25-6).  Thus, although the Court could take the Equifax credit report into account on a motion pursuant to Rule 12(b)(6) because it is "integral" to the complaint, *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), the only version of it to which the Court has access provides no information regarding the notations on the disputed Synchrony tradeline.  Without that additional information, the Court cannot say as a matter of law that there was no inaccuracy in the information furnished to Equifax by Synchrony.

The Court is accordingly constrained to deny Synchrony's motion for dismissal under Rule 12(b)(6).  To be clear, the Court's denial of the motion to dismiss does not preclude Synchrony from making a motion for summary judgment based on a more fulsome record.  *See Fleming v. Ginny's, Inc.*, No. 3:20-CV-284-DPJ-FKB, 2020 WL 6828752, at *3 (S.D. Miss. Nov. 20, 2020)  (denying motion to dismiss because "[a]bsent the actual report, the Court cannot say whether the report accurately listed the accounts as closed or otherwise indicated that the information was historical," but noting that "Defendants may ultimately have a strong argument at the summary-judgment stage").

## CONCLUSION

For the reasons set forth above, the Court grants the Department of Education's motion to dismiss or for summary judgment (Dkt. 22) to the extent that it dismisses

Plaintiff's claims against the Department of Education without prejudice for lack of subject matter jurisdiction. The Court denies Synchrony's motion to dismiss. (Dkt. 14).

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: May 21, 2021
      Rochester, New York